UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DECARLOS FREEMAN, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:19-CV-70 RLM-MGG |
| | ) | |
| MOLDING PRODUCTS, | ) | |
| | ) | |
| *Defendant* | ) | |

## OPINION AND ORDER

DeCarlos Freeman, proceedings without an attorney, sued Molding Products for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C, § 2000e *et seq.*, alleging he was harassed, subjected to a hostile work environment, and wrongfully terminated from his temporary placement at Molding Products based on his race.[1] Molding Products' motion for summary judgment is before the court, and, for the following reasons, the court grants Molding Products' motion.

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party — Mr. Freeman in this instance.

---

[1] Mr. Freeman's claims against Dwayne Cooper and Neal Hinds were dismissed in May 2020 [Doc. No. 16].

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Molding Products bears the burden of informing the court of the basis for its motion, and presenting evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If Molding Products meets that burden, Mr. Freeman can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of America, N,A., 662 F.3d 963, 966 (7th Cir. 2011); *see also* Hastings Mut. Ins. Co. v. LaFollette, No. 1:07-cv-1085, 2009 WL 348769, at *2 (S.D. Ind. Feb. 6, 2009) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies."); Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events").

Viewed in the light most favorable to Mr. Freeman, the evidence shows that Express Employment Professionals, a staffing agency, placed Mr. Freeman with Molding Products in August 2017. He worked as a mixer under the supervision of Dwayne Cooper and others. Mr. Cooper frequently complained about Mr. Freeman's work ethic, "micro-managed" him, and reportedly told Mr. Freeman in

2

September 2017 that he "hated" him.

On January 10, 2018, Mr. Freeman went to the quality assurance lab after clocking-in to ask about a product he'd mixed the previous night, and spent twenty to thirty minutes talking to people in the lab. Mr. Cooper saw that Mr. Freeman was away from his work area, confronted him, and took him to see Production Manager Neal Hinds.

Mr. Hinds attests that Mr. Freeman had been cautioned before about spending time away from his work area, that he had no justifiable reason for being in the lab, and that when asked about his whereabouts and the amount of time he'd spent in the lab, Mr. Freeman first denied being there, then said he was only there for a few minutes. Mr. Hinds concluded that Mr. Freeman wasn't being truthful about his activities on January 10 and discharged him for misconduct related to his deceptive behavior. Mr. Freeman doesn't remember what was discussed at the meeting, but contends that Dwayne Cooper changed his schedule, scolded him, micro-managed his day-to-day activities, questioned his work ethic and ability to multi-task, and ultimately fired him because he "hated [him]" and that Neal Hinds "was in cahoots with [Mr. Cooper]" and allowed it to happen.

"The legal standard used to evaluate a discrimination claim 'is simply whether the evidence,' considered as a whole, 'would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other

3

proscribed factor caused the discharge or other adverse employment action.' " Abrego v. Wilkie, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016)). In determining whether Mr. Freeman has met that burden on his claims, the court considers all of the evidence cumulatively under a "totality-of-the-evidence approach." Gonzalez v. Tape Case Ltd., No. 17-C-2011, 2018 WL 3574754, at *2 (N.D. Ill. July 25, 2018); *see also* David v. Bd. of Trustees of Cmty. College Dist. No. 508, 846 F.3d 216, 224 (7th Cir. 2017). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

To establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework, Mr. Freeman must show that: (1) he is a member of a protected class; (2) his job performance met Molding Product's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee who wasn't in the protected class was treated better. Khowaja v. Sessions, 893 F.3d 1010, 1014-15 (7th Cir. 2018). If he makes a *prima facie* showing, the burden of production shifts to Molding Products to provide a legitimate, nondiscriminatory reason for the adverse employment action. If it articulates such a reason, the burden shifts back to Mr. Freeman to present evidence establishing a genuine dispute as to whether that reason was a pretext

4

for discrimination. Smith v. Chicago Transit Auth., 806 F.3d 900, 905 (7th Cir. 2015).

Mr. Freeman submitted three documents to rebut the evidence submitted by Molding Products about his activities and its reasons for discharging him: (1) an unsigned statement by Christopher Broadnax asserting that Neal Hinds told him during an interview that "De'Carlos was a great worker [and] that he was looking forward to hiring De'Carlos Freeman into the company within a couple of weeks"; (2) an affidavit by another former temporary placement at Molding Producgts, Rashaad Cullens, who attests that Dwayne Cooper told him "I don't hate Carlos. I hate everybody", that "from [his] perspective [he] knew Coop[er] nor Ne[a]l liked de-Carlos", that they were "always on him", and that "no other mixers had supervisors watching over them asking questions"; and (3) Mr. Freeman's objections to the "Human Rights Appeal reasons" for dismissing his claim against Molding Products. Nothing in those documents or Mr. Freeman's own testimony during his deposition in February 2020 provides a factual basis that would support Mr. Freeman's Title VII claims or shows that Molding Products' stated reason for discharging him was a pretext for discrimination.

Mr. Freeman acknowledged during his deposition that he didn't know why Mr. Copper didn't like him, why he was being "micro-managed", or why he was fired. Mr. Freeman testified that he didn't remember what was said at the meeting on January 10, but he doesn't dispute that he wasn't truthful when Mr. Hinds

5

asked about his January 10 activities, that he'd previously been warned about spending time away from his work area, or that Mr. Hinds, not Mr. Cooper, made the decision to discharge him based on misconduct related to his deceptive behavior, and not his performance as a mixer. Mr. Freeman hasn't presented any evidence from which a fact-finder could infer that Mr. Cooper and Mr. Hinds treated him differently because he was black or that they treated any similarly-situated temporary hire who wasn't in the protected class better.

Even if Mr. Freeman had established a *prima facie* case, he hasn't presented any evidence that Molding Products' stated reason for terminating him was pretextual. To show pretext, Mr. Freeman "must present evidence suggesting that the employer is dissembling," O'Leary v. Accretive Health, Inc., 657 F.3d 625, 635 (7th Cir. 2011) – that its stated reason for terminating him was "phony" or a "lie." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995). At this stage in the proceedings, Mr. Freeman can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of America, N,A., 662 F.3d 963, 966 (7th Cir. 2011).  He hasn't done that, and mere speculation on conjecture on his part as to what Molding Products' motivation was is insufficient.

For the foregoing reasons, Molding Products' motion for summary judgment [Doc. No.43] is GRANTED, the September 14 final pretrial conference and

September 22 trial are VACATED, and Molding Products' motion to strike the affidavit Mr. Freeman filed in response to a discovery dispute [Doc. No. 47] is DENIED as moot. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:  August 26, 2020

/s/ Robert L. Miller, Jr.
Judge
United States District Court
